UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLY PUBLICATION ONLY

RAFFI STEPANIAN,

                          Plaintiff,

- versus -

CITY OF NEW YORK, NYC HUMAN
RESOURCES ADMINISTRATION
DEPARTMENT OF SOCIAL SERVICES,
MR. ANTHONY CASTRO, MRS. YVONNE
MONTES, STEVEN BANKS, MR. DIMITRO
TRACHENKO, DR. JONES, Psychiatrist,
privately, individually and in their official
capacities, jointly and severally,

                          Defendants.

MEMORANDUM
AND ORDER

15-CV-1943 (JG)(SMG)

JOHN GLEESON, United States District Judge:

        On April 8, 2015, plaintiff Raffi Stepanian,[1] appearing *pro se*, filed this action against defendants alleging, *inter alia*, violations of his constitutional rights. Stepanian filed an amended complaint on July 17, 2015, and a second amended complaint on July 24, 2015. I grant Stepanian's request to proceed *in forma pauperis* solely for the purpose of this Order. For the reasons set forth below, the action is dismissed.

## BACKGROUND

        Stepanian brings this action based on several visits from Adult Protective Services ("APS") caseworkers in the New York City Human Resources Administration ("HRA"), seeking to visit his father, Shara Stepanian ("Shara"). During the first visit, on February 26, 2015,

---

[1] For purposes of this Memorandum and Order, I refer to Raffi Stepanian as "Stepanian," and other members of the Stepanian family by their first or full name.

1

Milagros Vega, an APS caseworker left a "Notice of Attempted Visit" when Shara was not available. Second Am. Compl. at 4-6. On March 3, 2015, a different APS caseworker, Anthony Castro, visited Shara, who refused to speak to Castro and denied needing APS assistance in Stepanian's presence. *Id.* at 7-11. On April 28, 2015, APS caseworker Dimitro Trachenko made another attempt to interview Shara along with a psychiatrist, Dr. Jones. *Id.* at 11-13. After the last visit, the state court granted Commissioner Steven Banks's application for an "Order Granting Access" and on July 15, 2015, Trachenko and Dr. Jones, along with New York City Police Officers Udik and Cannariato, entered Stepanian's home. *Id.* at 14-15, 18-19. It is unclear whether the last attempt to interview Shara was successful. Stepanian does not describe any conduct taken after the last visit on July 15, 2015. Stepanian videotaped most of the APS visits and attempted visits, posted the videos on the website YouTube, and provided links to the videos in the second amended complaint. *See id.* at 6-8, 11-12, 16, 18-19.

DISCUSSION

A.  *Standard of Review*

Since Stepanian is proceeding *pro se*, his pleadings are to be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation marks omitted); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nonetheless, I am required to dismiss a complaint filed *in forma pauperis* if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A *pro se* complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

2

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, at the pleading stage, I must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).

B.  *Constitutional Violations*[2]

   1.  *Municipal Defendants*

To sustain a claim brought under 42 U.S.C. § 1983, a plaintiff must show that the defendant (a) acted under color of state law (b) to deprive the plaintiff of a constitutional right. *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994). However, a claim under Section 1983 cannot lie against HRA and the Department of Social Services. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter, Ch. 17 § 396. That provision "has been construed to mean that New York City departments [and agencies, such as the HRA], as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) (per curiam); *see also Cincotta v. New York City Human Resources Admin.*, No. 00-CV-9064 (JGK), 2001 WL 897176, at *10 (S.D.N.Y. Aug. 9, 2001) (HRA and Corporation Counsel are not suable entities). Accordingly, the claims against these municipal agencies are dismissed.

---

[2] To the extent Stepanian seeks to bring this action on behalf of his father, he cannot do so as he is not a licensed attorney. *See* 28 U.S.C. § 1654; *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself." (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)).

The action against the City of New York ("City") likewise does not pass muster. It is well-settled that a municipality can only be sued under Section 1983 if the alleged injury was the result of an official policy, custom, or practice of the municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 707-08 (1978). "Boilerplate allegations of unconstitutional policies and practices" are insufficient to plead a municipality's liability under Section 1983. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). Stepanian's assertion of a policy is conclusory; he has not plausibly alleged any City policy, custom, or practice that might have deprived him of a federal statutory or constitutional right.

2.  *Dimitro Trachenko and Dr. Jones*

As to APS caseworker Dimitro Trachenko,[3] the complaint alleges that he falsely stated in an affidavit to the state court that Stepanian had "refused social workers access to Shara Stepanian and his residence," in connection with the application for an order granting access. *See* Second Am. Compl. at 14. To establish a violation of his Fourth Amendment right not to be searched absent a warrant supported by probable cause, a Section 1983 plaintiff "must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994). "Unsupported conclusory allegations of falsehood or material omission cannot support [such a] challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To determine whether the false statements were necessary to the finding of probable cause, the court looks "to the hypothetical contents of a 'corrected' application to determine whether a

---

[3] It appears that Stepanian has misspelled his name. In the state court papers, he is identified as Dmitro Tarachenko. *See* Second Am. Compl. at 14.

proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law." *McColley v. Cnty. of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014) (internal quotation marks omitted).

Stepanian alleges that he did not deny the APS caseworkers access to his home where both he and Shara lived. Second Am. Compl. at 12. Rather, Shara himself told Trachenko and Dr. Jones that Shara did not wish to speak with them when they visited his house on April 28, 2015. *Id.* at 11. Despite knowing this, Trachenko allegedly stated in an affidavit that "Raffi Stepanian has refused social workers access to Shara Stepanian and his residence." *Id.* at 14-15 (attaching July 8, 2015 Order Granting Access). The state court expressly relied on these alleged false representations in issuing the warrant for the APS caseworkers and others to enter Stepanian's residence. *See id.* Armed with this warrant, Trachenko and Jones, accompanied by two N.Y.P.D. officers, subsequently executed a search on July 15, 2015, which allegedly violated Stepanian's Fourth Amendment rights. *Id.* at 18-19.

However, other facts stated in the complaint and its supporting materials make clear that Stepanian refused APS caseworkers access to Shara and his residence on July 15, 2015. Because of this, the complaint does not plausibly allege that Trachenko's affidavit contained false representations to that effect. According to the complaint, Trachenko and Jones attempted to visit Shara at his home on April 28, 2015, and Stepanian spoke to them at length outside on the porch of his and Shara's house. *Id.* at 11. Stepanian videotaped this conversation, posted the video on the website YouTube, and included the video's web address in the complaint. *See* Second Am. Compl. at 16, 18.[4] Since the video is incorporated into the complaint, I am allowed to consider it on a motion to dismiss. *See DiFolco v. MSNBC Cable*

---

[4] *See* Raffi Stepanian, *Dr. Jones and 'Mr. Trachenko' Human Resources Administration*, YOUTUBE (Apr. 28, 2015), https://www.youtube.com/watch?v=V5KGpKxd_2k (last accessed Sept. 14, 2015) ("April 28, 2015 Video").

5

*L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (permitting consideration of a document "incorporated by reference in the complaint" or "where the complaint relies heavily upon [the document's] terms and effect"); *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 498 n.1 (S.D.N.Y. 2013) (considering video footage referenced in the complaint in deciding a motion to dismiss); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 374 n.1 (S.D.N.Y. 2013) (considering "video recordings of the incident, as they are integral to the Complaint and were relied on heavily in drafting it"); *see also Garcia v. Does*, 779 F.3d 84, 87-88 (2d Cir. 2015) (considering, on consent of both parties, videos incorporated into the complaint on a motion to dismiss).

Though it appears the video contains just excerpts of the April 28, 2015 encounter, Jones and Trachenko at all times appear outside the house. More importantly, the video shows Trachenko and Jones asking to enter the premises several times and Stepanian refusing to let them in. Around the 13-minute mark, Trachenko asked Stepanian,

> TRACHENKO: Would you allow us inside to try to talk to him [Shara]? We need to talk to him inside one-on-one.
>
> STEPANIAN: I'm sorry, sir?
>
> TRACHENKO: We need to talk to him without anyone else present.
>
> STEPANIAN: You're asking me to let you into this house? Do you have a warrant?
>
> . . .
>
> Which authority grants you permission to enter into this house without a warrant?

*See* April 28, 2015 Video at 13:33-14:30. At another point, Trachenko again asks Stepanian,

> TRACHENKO: Let us try though. Let us go inside and try to talk to him.

6

> STEPANIAN: I cannot let you into this house if he doesn't want you in here. But I can get him down here. Maybe.
>
> TRACHENKO: Ok, but we need to talk to him, like, one-on-one without anybody else present.
>
> STEPANIAN: If he agrees to speak with you one-on-one according to your terms, then he'll speak with you. But you cannot force your way into this house without obtaining a warrant.
>
> JONES: You're right. That's correct.
>
> TRACHENKO: We're not going to force anyone into doing anything.

*See* April 28, 2015 Video at 15:21-58. Towards the end of the conversation, Jones observes, "You're feeling like you can't let us in because he is saying no." *See id.* at 18:34. The video concludes by showing Jones and Trachenko stepping down from the porch and leaving the residence.

Both in the April 28, 2015 Video and the complaint, Stepanian stresses that he was not stopping the APS employees from speaking with Shara; rather, Shara himself refused to come out and speak with them.[5] However, this does not change the fact that Trachenko and Jones asked to enter the house and speak with Shara alone, and Stepanian did not let them.

Accordingly, the complaint fails to plausibly state that either Trachenko or Jones violated Stepanian's Fourth Amendment rights. To the contrary, the allegations show that these defendants were either acting to investigate a claim of elder abuse or were acting pursuant to a court order to determine whether any services were required.[6]

---

[5] The beginning of the video appears to show another person, presumably Shara, speaking with Jones and Trachenko from inside the house before abruptly saying, "Goodbye. Have a good day," and closing the door. *See* April 28, 2015 Video at 00:00-00:20.

[6] Stepanian also videotaped part of the July 15, 2015 entry, and provided a link to that video in the complaint. *See* Second Am. Compl. at 18 (containing link to Raffi Stepanian, *NYCHRA Illegal Warrant, Illegal Entry*, YOUTUBE (July 15, 2015), https://www.youtube.com/watch?v=7ptgcdhqB8Q (last accessed Sept. 14, 2015)). Nothing in this video supports a violation of Stepanian's constitutional rights.

3. *Other Defendants*

Since the complaint lacks any plausible allegation of a constitutional violation, it also must be dismissed as to Yvonne Montes, an APS supervisor, and Steven Banks, the Commissioner of Social Services. Stepanian's charges against these defendants fail on the additional ground that they do not plausibly suggest any direct involvement with or knowledge of the alleged deprivation of Stepanian's civil rights. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell*, 449 F.3d at 484); *accord Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). To the extent Stepanian is suing Montes and Banks based on their role as supervisors, the United States Supreme Court has held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 676-77. Since the claims against Montes and Banks can be supported only on the basis of the *respondeat superior* or vicarious liability doctrines, which are not applicable to Section 1983 actions, the claims against these defendants are dismissed.

The alleged First Amendment violations arising from Stepanian's exchange with APS caseworker Anthony Castro in which Castro purportedly took exception to being videotaped fail to state a claim. *See* Second Am. Compl. at 9. Castro's remark that he was "unappreciative of plaintiff's First Amendment protected filming" does not amount to a

8

constitutional violation. *See id.* Nor do Stepanian's conclusory allegations that Castro discriminated against him constitute a plausible claim to relief. *See id.* at 9, 11.

Finally, Stepanian's conspiracy claims under 42 U.S.C. §§ 1985 and 1986 also must be dismissed. To successfully maintain an action under § 1985, a plaintiff must "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotations omitted). As the Second Circuit has noted, "[c]omplaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights'" warrant dismissal. *Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (per curiam)); *see also Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"). Stepanian alleges no facts sufficient to show the existence of a conspiracy designed to deprive him of his constitutional rights, and as such, his Section 1985 claim must be dismissed. Since the Section 1985 conspiracy claim fails, his Section 1986 claim, in turn, cannot go forward. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (holding that "a § 1986 claim is contingent on a valid § 1985 claim"); *see also Wang v. Office of Prof"l Med. Conduct*, 228 F. App'x 17, 19 (2d Cir. 2007).

C.    *State Law Claims*

The second amended complaint charges multiple state law causes of action, including libel, slander, defamation, and intentional and negligent infliction of emotional distress. *See* Second Am. Compl. at 1. Stepanian offers no factual support for these claims beyond that put forward in support of his federal claims. Reading the second amended complaint

9

liberally, I find no plausible claim to relief under state law. As such, these claims must also be dismissed.

## CONCLUSION

For the reasons set forth above, I hereby dismiss this action, filed *in forma pauperis*, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). All state law claims are dismissed without prejudice. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk is respectfully directed to enter judgment in favor of defendants and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 14, 2015
      Brooklyn, New York